IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Reuben West, | |
| *On behalf of himself and those similarly situated*, | Case No. |
| Plaintiff, | Judge |
| | Magistrate Judge |
| v. | |
| Unlimited Potential Pizza, Inc.; Best Pizza, LLC; DW & KV Pizza, Inc.; Milford Pizza, Inc.; Sandeaver, Inc; Symmes Pizza, Inc.; TGD Food Group, Inc.; Weaver Dream Team, Inc.; MaryLu Weaver; John Doe 1-10; Doe Corporation 1-10 | Jury Demand Endorsed Hereon |
| Defendants. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

1.      Reuben West, on behalf of himself and all similarly-situated individuals, brings this action against Unlimited Potential Pizza, Inc.; Defendants Best Pizza, LLC; DW & KV Pizza, Inc.; Milford Pizza, Inc.; Sandeaver, Inc; Symmes Pizza, Inc.; TGD Food Group, Inc.; Weaver Dream Team, Inc.; MaryLu Weaver; John Doe 1-10; Doe Corporation 1-10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), the Ohio Constitution, Article II, Section 34a ("Section 34a"), O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), and O.R.C. § 2307.60, and unjust enrichment.

1

2.      Defendants operate several Jet's Pizza franchises in Ohio and Michigan (the "Defendants' Jet's Pizza stores").

3.      Defendants repeatedly and willfully violated the Fair Labor Standards Act, the Ohio Constitution, and the Ohio Prompt Pay Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage for all hours worked.

4.      Defendants maintain a policy and practice of underpaying their delivery drivers in violation of the FLSA, Section 34a, and the Prompt Pay Act.

5.      All delivery drivers at the Defendants' Jet's Pizza stores, including Plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for expenses.

6.      Plaintiff brings this action on behalf of himself and similarly situated current and former delivery drivers nationwide who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA by Defendants.

7.      Plaintiff also brings this action on behalf of himself and similarly situated current and former delivery drivers in Ohio, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of Section 34a, the Prompt Pay Act, O.R.C. § 2307.60, and for unjust enrichment.

**Jurisdiction and Venue**

8.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

9.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Ohio law claims.

2

10.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## Parties

### Plaintiff

### Reuben West

11.     Plaintiff Reuben West is a resident of Ohio and, at all material times herein, Plaintiff worked within the boundaries of Southern District of Ohio.

12.     Plaintiff is an "employee" of all of the Defendants as defined in the FLSA and Section 34a.

13.     Plaintiff has given written consent to join this action.

### Defendants

14.     Defendants' Jet's Pizza stores are owned and/or operated by a number of entities and individuals, each of whom employ Plaintiff and the delivery drivers.

15.     Defendants operate the Defendants' Jet's Pizza stores.

16.     Defendants operate the Defendants' Jet's Pizza stores out of their headquarters in Clinton Township, Michigan.

17.     The Entity Defendants—Unlimited Potential Pizza, Inc.; Best Pizza, LLC; DW & KV Pizza, Inc.; Milford Pizza, Inc.; Sandeaver, Inc; Symmes Pizza, Inc.; TGD Food Group, Inc.; and Weaver Dream Team, Inc.—are all part of Defendants' Jet's Pizza franchise operation.

18.     MaryLu Weaver is the owner and operator of Defendants' Jet's Pizza stores and the Entity Defendants.

19.     MaryLu Weaver has entered into franchise agreements with Jet's Pizza to operate Defendants' Jet's Pizza stores.

20.     MaryLu Weaver has entered into franchise agreements with Jet's Pizza whereby she agrees to ensure that any Jet's stores operated pursuant to the franchise agreement will comply with all laws, including wage and hour laws.

21.     MaryLu Weaver has the authority to and does hire and fire employees, supervise and control the work schedules and conditions of employees, determine the rate and method of pay, and/or maintain employee records.

22.     Defendants form a "single employer" as they are part of a single integrated enterprise and/or they are joint employers as they jointly operate a chain of Jet's Pizza franchise stores and maintain interrelated operations, centralized control of labor relations, common management, common ownership, and financial control. Because the work performed by Plaintiff, and all other delivery drivers, benefited all Defendants and directly or indirectly furthered their joint interests, Defendants are collectively the joint employers of Plaintiff and other similarly situated employees under the FLSA's definition of "employer."

**Unlimited Potential Pizza, Inc.**

23.     Defendant Unlimited Potential Pizza, Inc. is a foreign corporation authorized to do business under the laws of Ohio.

24.     Unlimited Potential Pizza, Inc.'s principal place of business is in Michigan.

25.     Unlimited Potential Pizza, Inc. owns and operates one or more Jet's Pizza franchise stores in Ohio.

26.     Unlimited Potential Pizza, Inc. is owned by MaryLu Weaver.

4

27.     Unlimited Potential Pizza, Inc. is operated by MaryLu Weaver.

28.     Unlimited Potential Pizza, Inc. was the entity name on Plaintiff's paystubs as of February 2021.

29.     Unlimited Potential Pizza, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

30.     Unlimited Potential Pizza, Inc. applies, or causes to be applied, substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

31.     Unlimited Potential Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

32.     At all relevant times, Unlimited Potential Pizza, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

33.     Unlimited Potential Pizza, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and Section 34a.

34.     At all relevant times, Unlimited Potential Pizza, Inc. has been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

35.     Unlimited Potential Pizza, Inc.'s gross revenue exceeds $500,000 per year.

**Best Pizza, LLC**

36.      Defendant Best Pizza, LLC is a domestic limited liability company authorized to do business under the laws of Ohio.

37.      Best Pizza, LLC's principal place of business is in Ohio.

38.      Upon information and belief, Best Pizza, LLC owns and operates one or more Jet's Pizza franchise stores in Ohio.

39.      Upon information and belief, Best Pizza, LLC is owned by MaryLu Weaver.

40.      Upon information and belief, Best Pizza, LLC is operated by MaryLu Weaver.

41.      Best Pizza, LLC had substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

42.      Best Pizza, LLC applied or caused to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

43.      Best Pizza, LLC had direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

44.      At all relevant times, Best Pizza, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

45.      Best Pizza, LLC was an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and Section 34a.

46.      At all relevant times, Best Pizza, LLC has been an enterprise engaged in "the

production of goods for commerce" within the meaning of the phrase as used in the FLSA.

47.     Best Pizza, LLC's gross revenue exceeded $500,000 per year.

**DW & KV Pizza, Inc.**

48.     Defendant DW & KV Pizza, Inc. is a foreign corporation authorized to do business under the laws of Ohio.

49.     DW & KV Pizza, Inc.'s principal place of business is in Michigan.

50.     DW & KV Pizza, Inc. owns and operates one or more Jet's Pizza franchise stores in Ohio.

51.     Upon information and belief, DW & KV Pizza, Inc. is owned by MaryLu Weaver.

52.     Upon information and belief, DW & KV Pizza, Inc. is operated by MaryLu Weaver.

53.     DW & KV Pizza, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

54.     DW & KV Pizza, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

55.     DW & KV Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

56.     At all relevant times, DW & KV Pizza, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

57.     DW & KV Pizza, Inc. is an "employer" of Plaintiff and similarly situated employees

as that term is defined by the FLSA and Section 34a.

58.     At all relevant times, DW & KV Pizza, Inc. has been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

59.     DW & KV Pizza, Inc.'s gross revenue exceeds $500,000 per year.

**Milford Pizza, Inc.**

60.     Defendant Milford Pizza, Inc. is a foreign corporation authorized to do business under the laws of Ohio.

61.     Milford Pizza, Inc.'s principal place of business is in Michigan.

62.     Milford Pizza, Inc. owns and operates one or more Jet's Pizza franchise stores in Ohio.

63.     Upon information and belief, Milford Pizza, Inc. is owned by MaryLu Weaver.

64.     Upon information and belief, Milford Pizza, Inc. is operated by MaryLu Weaver.

65.     Milford Pizza, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

66.     Milford Pizza, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

67.     Milford Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

68.     At all relevant times, Milford Pizza, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

69.    Milford Pizza, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and Section 34a.

70.    At all relevant times, Milford Pizza, Inc. has been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

71.    Milford Pizza, Inc.'s gross revenue exceeds $500,000 per year.

**Sandeaver, Inc.**

72.    Defendant Sandeaver, Inc. is a foreign corporation authorized to do business under the laws of Ohio.

73.    Sandeaver, Inc.'s principal place of business is in Michigan.

74.    Sandeaver, Inc. owns and operates one or more Jet's Pizza franchise stores in Ohio.

75.    Upon information and belief, Sandeaver, Inc. is owned by MaryLu Weaver.

76.    Upon information and belief, Sandeaver, Inc. is operated by MaryLu Weaver.

77.    Sandeaver, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

78.    Sandeaver, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

79.    Sandeaver, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

80.    At all relevant times, Sandeaver, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining,

9

timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

81.     Sandeaver, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and Section 34a.

82.     At all relevant times, Sandeaver, Inc. has been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

83.     Sandeaver, Inc.'s gross revenue exceeds $500,000 per year.

**Symmes Pizza, Inc.**

84.     Defendant Symmes Pizza, Inc. is a foreign corporation authorized to do business under the laws of Ohio.

85.     Symmes Pizza, Inc.'s principal place of business is in Michigan.

86.     Symmes Pizza, Inc. owns and operates one or more Jet's Pizza franchise stores in Ohio.

87.     Upon information and belief, Symmes Pizza, Inc. is owned by MaryLu Weaver.

88.     Upon information and belief, Symmes Pizza, Inc. is operated by MaryLu Weaver.

89.     Symmes Pizza, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

90.     Symmes Pizza, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

91.     Symmes Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

92.     At all relevant times, Symmes Pizza, Inc. maintained control, oversight, and direction

over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

93.     Symmes Pizza, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and Section 34a.

94.     At all relevant times, Symmes Pizza, Inc. has been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

95.     Symmes Pizza, Inc.'s gross revenue exceeds $500,000 per year.

**TGD Food Group, Inc.**

96.     Defendant TGD Food Group, Inc. is a foreign corporation authorized to do business under the laws of Ohio.

97.     TGD Food Group, Inc.'s principal place of business is in Michigan.

98.     TGD Food Group, Inc. owns and operates one or more Jet's Pizza franchise stores in Ohio.

99.     Upon information and belief, TGD Food Group, Inc. is owned by MaryLu Weaver.

100.    Upon information and belief, TGD Food Group, Inc. is operated by MaryLu Weaver.

101.    TGD Food Group, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

102.    TGD Food Group, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

103.    TGD Food Group, Inc. has direct or indirect control of the terms and conditions of

Plaintiff's work and the work of similarly situated employees.

104.     At all relevant times, TGD Food Group, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

105.     TGD Food Group, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and Section 34a.

106.     At all relevant times, TGD Food Group, Inc. has been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

107.     TGD Food Group, Inc.'s gross revenue exceeds $500,000 per year.

**Weaver Dream Team, Inc.**

108.     Defendant Weaver Dream Team, Inc. is a foreign corporation authorized to do business under the laws of Ohio.

109.     Weaver Dream Team, Inc.'s principal place of business is in Michigan.

110.     Weaver Dream Team, Inc. owns and operates one or more Jet's Pizza franchise stores in Ohio.

111.     Weaver Dream Team, Inc. is owned by MaryLu Weaver.

112.     Weaver Dream Team, Inc. is operated by MaryLu Weaver.

113.     Weaver Dream Team, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

114.     Weaver Dream Team, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of

12

automobile expenses.

115.    Weaver Dream Team, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

116.    At all relevant times, Weaver Dream Team, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

117.    Weaver Dream Team, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and Section 34a.

118.    At all relevant times, Weaver Dream Team, Inc. has been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

119.    Weaver Dream Team, Inc.'s gross revenue exceeds $500,000 per year.

**MaryLu Weaver**

120.    Defendant MaryLu Weaver is the owner of Defendants' Jet's Pizza stores.

121.    Upon information and belief, MaryLu Weaver is a Jet's Pizza franchisee.

122.    Upon information and belief, MaryLu Weaver has entered into franchise agreements with Jet's Pizza relating to each of Defendants' Jet's Pizza stores.

123.    MaryLu Weaver is an operator of Defendants' Jet's Pizza operation and Defendants' Jet's Pizza stores.

124.    Upon information and belief, MaryLu Weaver is the owner of Defendants' Jet's Pizza stores.

125.    MaryLu Weaver operates and owns multiple Jet's Pizza stores across Ohio and Michigan.

126. MaryLu Weaver is individually liable to the delivery drivers at Defendants' Jet's Pizza stores under the definitions of "employer" set forth in the FLSA and Section 34a because she owns and operates Defendants' Jet's Pizza stores, serves as an owner and officer of the Defendants' Jet's Pizza stores, ultimately controls significant aspects of Defendants' Jet's Pizza stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

127. At all relevant times, by virtue of her role as an owner, officer, and operator of the Defendants' Jet's Pizza operation, and the Defendants' Jet's Pizza stores, MaryLu Weaver has had financial control over the operations at each of the Defendants' Jet's Pizza stores.

128. At all relevant times, by virtue of her role as an owner, officer, and operator of the Defendants' Jet's Pizza operation, and the Defendants' Jet's Pizza stores, MaryLu Weaver has had a role in significant aspects of the Defendants' Jet's Pizza stores' day to day operations.

129. At all relevant times, by virtue of her role as an owner, officer, and operator of the Defendant Entities, the Defendants' Jet's Pizza operation, and the Defendants' Jet's Pizza stores, MaryLu Weaver has had control over the Defendants' Jet's Pizza stores' pay policies.

130. At all relevant times, by virtue of her role as an owner, officer, and operator of the Defendant Entities, the Defendants' Jet's Pizza operation, and the Defendants' Jet's Pizza stores, MaryLu Weaver has had power over personnel and payroll decisions at the Defendants' Jet's Pizza stores, including but not limited to influence over delivery driver pay.

131. At all relevant times, by virtue of her role as an owner, officer, and operator of the Defendant Entities, the Defendants' Jet's Pizza operation, and the Defendants' Jet's Pizza stores, MaryLu Weaver has had the power to hire, fire, and discipline employees, including delivery drivers

14

at the Defendants' Jet's Pizza stores.

132.    At all relevant times, by virtue of her role as an owner, officer, and operator of the Defendant Entities, the Defendants' Jet's Pizza operation, and the Defendants' Jet's Pizza stores, MaryLu Weaver has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Jet's Pizza stores.

133.    At all relevant times, by virtue of her role as an owner, officer, and operator of the Defendant Entities, the Defendants' Jet's Pizza operation, and the Defendants' Jet's Pizza stores, MaryLu Weaver has had the power to transfer the assets and liabilities of the Defendant entities.

134.    At all relevant times, by virtue of her role as an owner, officer, and operator of the Defendant Entities, the Defendants' Jet's Pizza operation, and the Defendants' Jet's Pizza stores, MaryLu Weaver has had the power to declare bankruptcy on behalf of the Defendant entities.

135.    At all relevant times, by virtue of her role as an owner, officer, and operator of the Defendant Entities, the Defendants' Jet's Pizza operation, and the Defendants' Jet's Pizza stores, MaryLu Weaver has had the power to enter into contracts on behalf of each of the Defendants' Jet's Pizza stores.

136.    At all relevant times, by virtue of her role as an owner, officer, and operator of the Defendant Entities, the Defendants' Jet's Pizza operation, and the Defendants' Jet's Pizza stores, MaryLu Weaver has had the power to close, shut down, and/or sell each of the Defendants' Jet's Pizza stores.

137.    At all relevant times, by virtue of her role as an owner, officer, and operator of the Defendant Entities, the Defendants' Jet's Pizza operation, and the Defendants' Jet's Pizza stores, MaryLu Weaver has authority over the overall direction of each of Defendants' Jet's stores and is

15

responsible for their operations.

138.    The Defendants' Jet's Pizza stores function for MaryLu Weaver's profit.

139.    MaryLu Weaver has influence over how the Defendants' Jet's Pizza stores can run more profitably and efficiently.

**Doe Corporation 1-10**

140.    Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' Jet's Pizza stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Jet's Pizza stores as that term is defined by the FLSA and Ohio wage law.

141.    Upon information and belief, MaryLu Weaver owns and/or operates, in whole or in part, a number of other entities that make up part of the Defendants' Jet's Pizza operation.

142.    Upon information and belief, the franchisor, Jet's Pizza, may also be liable as an employer of the delivery drivers employed at Defendants' Jet's Pizza stores.

143.    Upon information and belief, a sale of the store or stores took place at or around February 2021, and that the details of that transaction could reveal that other entities are liable for some or all of the claims asserted here (the "Predecessor Entities").

144.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

145.    Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Jet's Pizza stores as that term is defined by the FLSA and Ohio wage law.

146.     Upon information and belief, MaryLu Weaver has entered into co-owner relationships with a number of her managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Jet's Pizza stores as that term is defined by the FLSA and Ohio wage law.

147.     Upon information and belief, a sale of the store or stores took place at or around February 2021, and that the details of that transaction could reveal that other individuals are liable for some or all of the claims asserted here (the "Predecessor Individuals").

148.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## Facts

## Class-wide Factual Allegations

149.     During all relevant times, Defendants have operated the Defendants' Jet's Pizza stores.

150.     The primary function of the Defendants' Jet's Pizza stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

151.     Some or all of the Defendants' Jet's Pizza stores employ delivery drivers.

152.     Plaintiff and the similarly situated persons that Plaintiff seeks to represent are current and former delivery drivers employed by Defendants at the Defendants' Jet's Pizza stores.

153.     All delivery drivers employed at the Defendants' Jet's Pizza stores over the last three years have had essentially the same job duties—to deliver pizza and other food items to customers.

154.     Drivers at the Defendants' Jet's Pizza stores work "dual jobs".

155.     At all relevant times, Plaintiff and similarly situated delivery drivers have been paid

17

minimum wage, slightly above minimum wage, or minimum wage minus a tip credit for the hours they worked while completing deliveries.

156. At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage or slightly above minimum wage for the hours they worked inside the restaurant.

157. Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

158. Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, cellphone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

159. Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing charges, and incur cellphone and data charges all for the primary benefit of Defendants.

160. Defendants require delivery drivers at Defendants' Jet's Pizza stores to provide cellphones to use while completing deliveries for Defendants.

161. Defendants require delivery drivers to maintain and pay for operable cellphones to use in delivering Defendants' pizza and other food items.

162. The Defendants' Jet's Pizza stores do not reimburse the delivery drivers' cellphone expenses.

163. The Defendants' Jet's Pizza stores do not track or record the delivery drivers' cellphone expenses.

18

164.     Defendants reimburse delivery drivers' automobile expenses based on a set amount for each delivery they complete.

165.     Defendants' Jet's Pizza stores do not track or record the delivery drivers' actual automobile expenses.

166.     Defendants' Jet's Pizza stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

167.     Defendants do not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers worked for Defendants.

168.     Defendants do not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers worked for Defendants.

169.     Defendants do not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

170.     Defendants do not collect receipts of delivery drivers' automobile registration costs.

171.     Defendants do not collect receipts of delivery drivers' automobile financing or purchase costs.

172.     Defendants do not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at Defendants' Jet's Pizza stores.

173.     Defendants' Jet's Pizza stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

174.     Defendants' Jet's Pizza stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

19

175. Defendants' Jet's Pizza stores do not reimburse their delivery drivers' automobile expenses at the IRS standard business mileage rate.

176. Defendants' Jet's Pizza stores did not even reasonably approximate the delivery drivers' automobile expenses.

177. Defendants' Jet's Pizza stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

178. According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

a.   2015: 57.5 cents/mile
b.   2016: 54 cents/mile
c.   2017: 53.5 cents/mile
d.   2018: 54.5 cents/mile
e.   2019: 58 cents/mile
f.   2020: 57.5 cents/mile
g.   2021: 56 cents/mile

179. The delivery drivers at the Defendants' Jet's Pizza stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cellphone and data charges.

180. The delivery drivers at Defendants' Defendants' Jet's Pizza stores advance a business expense, interest free, to Defendants when they provide cars to use at work.

181. Defendants benefit from the delivery drivers spending time off the clock repairing and maintaining their vehicles.

182. Defendants benefit from the delivery drivers storing their vehicles when they are not being used to complete deliveries for Defendants.

183. Defendants benefit from delivery drivers taking on the risk of using their vehicles to drive for Defendants' business.

184. As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Ohio law.

185. At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the Defendants' Jet's Pizza stores.

186. All of Defendants' delivery drivers had similar experiences to that of Plaintiff. They completed similar job duties, were subject to the same reimbursement policy; received similar reimbursement payments; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate or at a tipped wage rate before deducting unreimbursed vehicle costs.

187. Regardless of the precise amount of the reimbursements paid at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

188. Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

189. Defendants are relying on the same flawed policy and methodology with respect to all delivery drivers at all of the Defendants' Jet's Pizza stores.

190. Defendants have failed to properly take a tip credit from Plaintiff's wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

191. Defendants have willfully failed to pay federal and Ohio state minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Jet's Pizza stores.

192. Defendants' policy of under-reimbursement unjustly enriches them at the expense of their delivery drivers. Under-reimbursing delivery drivers allows Defendants to shift business expenses onto their employees, which confers various benefits on Defendants beyond and in excess of the direct savings from violating wage laws.

193. All of Defendants' delivery drivers conferred a benefit on Defendants by providing cellphones to use when delivering pizza and other food items for Defendants.

194. All of Defendants' delivery drivers conferred a benefit on Defendants by providing vehicles to deliver pizza and other food items for Defendants.

195. Upon information and belief, Defendants are liable as successors in interest for damages suffered by Plaintiff and the delivery drivers at Defendants' Jets Pizza stores during all relevant times while Defendants' Jet's Pizza stores were owned and operated by the Predecessor Entities and/or Predecessor Individuals (collectively, "the Predecessors") because:

    a) Upon information and belief there is an express or implied agreement by Defendants to assume the Predecessors' liability;

    b) Upon information and belief, the transfer from Predecessor to Defendants was a de facto merger;

c) Upon information and belief, Defendants' have the ability to provide relief for the claims alleged;

d) Upon information and belief, Defendants' use the same facilities as the Predecessors;

e) Upon information and belief, there is substantial continuity of business operations between Defendants' business the Predecessors' business;

f) Upon information and belief, that Defendants use the same or substantially the same workforce as the Predecessors;

g) Upon information and belief, that Defendants use the same or substantially the same supervisory personnel as the Predecessors;

h) Upon information and belief, that the same jobs exist under substantially the same working conditions at Defendants' Jet's Pizza stores as they did when the stores were owned by the Predecessors;

i) Upon information and belief, Defendants use the same machinery, equipment, and methods of production that the Predecessors did; and

j) Upon information and belief, Defendants produce the same product as the Predecessors.

### Plaintiff's Individual Factual Allegations

196.    Plaintiff worked for Defendants as a pizza delivery driver at the Defendants' Jet's Pizza stores from approximately January 2019 until December 2021 at their Liberty Township, Ohio location.

197.    Plaintiff worked dual jobs—one inside the store, and one outside the store.

198.    Plaintiff was paid minimum wage minus a tip credit as an hourly rate for all hours

worked while delivering food.

199.     Plaintiff made $5.50 per hour while out on deliveries.

200.     Plaintiff delivered pizza and other food items to Defendants' customers' homes and businesses.

201.     When he was not making deliveries, Plaintiff worked inside the restaurant, completing tasks such as taking orders, preparing vegetables, sweeping, mopping, and/or doing other tasks necessary for the operation of the restaurant.

202.     Plaintiff was required to use his own car to deliver pizzas.

203.     Plaintiff was required to use his own cellphone when delivering pizzas.

204.     Plaintiff was paid minimum wage or slightly above minimum wage for the hours he worked inside the restaurant.

205.     Plaintiff made between $8.75 and $8.80 for hours worked inside of the store.

206.     Plaintiff was reimbursed per delivery while completing deliveries for Defendants.

207.     Plaintiff received $1.30 per delivery while he completed deliveries for Defendants.

208.     Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

209.     Plaintiff was required to maintain and pay for an operable cellphone to use in delivering Defendants' pizza and other food items.

210.     Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cellphone service, GPS service, automobile financing, and other equipment necessary for delivery drivers to complete their job duties.

24

211.     Plaintiff purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, and incur cellphone and data charges all for the primary benefit of Defendants.

212.     Defendants did not track the actual expenses incurred by Plaintiff.

213.     Defendants did not ask Plaintiff to provide receipts of the expenses he incurred while delivering pizzas and other food items for Defendants.

214.     Defendants' Jet's Pizza stores did not collect receipts from Plaintiff related to the expenses he incurred while completing deliveries.

215.     Defendants did not collect receipts of Plaintiff's gasoline purchases during weeks when he worked for Defendants

216.     Defendants did not collect receipts of Plaintiff's automobile maintenance, repair, and parts purchased or paid for during weeks when he worked for Defendants.

217.     Defendants did not collect receipts of Plaintiff's monthly or annual automobile insurance costs.

218.     Defendants did not collect receipts of Plaintiff's automobile registration costs.

219.     Defendants did not collect receipts of Plaintiff's automobile financing or purchase costs.

220.     Defendants did not collect any other receipts from Plaintiff related to the automobile expenses he incurred as a delivery driver at Defendants' Jet's Pizza stores.

221.     Defendants did not track the cellphone expenses incurred by Plaintiff.

222.     Defendants did not ask Plaintiff to provide records of cellphone expenses he incurred while delivering pizzas for Defendants.

223. Defendants did not collect receipts of Plaintiff's cellphone data plan expenses.

224. Defendants did not reimburse Plaintiff for his cellphone expenses.

225. Defendants did not reimburse Plaintiff based on his actual delivery-related expenses.

226. Plaintiff was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

227. During Plaintiff's employment with Defendants, Defendants failed to adequately reimburse Plaintiff for automobile and other job-related expenses.

228. Plaintiff regularly made approximately 3 to 5 deliveries per hour during the hours he worked as a delivery driver.

229. Plaintiff regularly drove approximately 6 miles round trip per delivery.

230. In 2019, for example, the IRS business mileage reimbursement has been $.58 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. If Plaintiff completed a delivery order that cost the customer $20, and required him to drive 6 miles, the result would be that Plaintiff was reimbursed $1.30 for the delivery, which amounts to $.21 per mile. Considering Plaintiff estimates an average of about 6 miles per delivery (6 miles × $.58 per mile = $3.48), Defendants under-reimbursed him by about $2.18 per delivery ($3.48 - $1.30), and $8.72 per hour ($2.18 × 4 deliveries per hour).

231. Defendants failed to properly take a tip credit from Plaintiff's wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Plaintiff they would be taking.

232. As a result of unreimbursed automobile expenses and other job-related expenses,

Defendants have failed to pay Plaintiff minimum wage as required by law.

233. Defendants have been unjustly enriched by Plaintiff in that he used his own vehicle and incurred vehicle-related expenses for Defendants' benefit.

234. Defendants have been unjustly enriched by Plaintiff in that he used his own cellphone and incurred cellphone-related expenses for Defendants' benefit.

### Collective Action Allegations

235. Plaintiff brings the First Count on behalf of himself and all similarly situated current and former delivery drivers employed at the Defendants' Jet's Pizza stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

236. At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

237. Defendants' unlawful conduct is pursuant to a corporate policy or practice.

238. Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

239. Defendants' unlawful conduct has been widespread, repeated, and consistent.

240. The First Count is properly brought under and maintained as an opt-in collective

action under 29 U.S.C. § 216(b).

241.     In recognition of the services Plaintiff has rendered and will continue to render to the

FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## Class Action Allegations

242.     Plaintiff brings the Second, Third, and Fourth Counts under Federal Rule of Civil

Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at Defendants' Jet's
> Pizza stores in the State of Ohio between the date three years prior to the filing of the
> original complaint and the date of final judgment in this matter ("Rule 23 Ohio Wage
> Class").

243.     Plaintiff brings Fifth Count under Federal Rule of Civil procedure 23, on behalf of

himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at Defendants' Jet's
> Pizza stores in the State of Ohio between the date six years prior to the filing of the
> original complaint and the date of final judgment in this matter ("Rule 23 Ohio Unjust
> Enrichment Class").

244.     Excluded from the Rule 23 Ohio Wage Class and Rule 23 Ohio Unjust Enrichment

Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any

individual who has, or who at any time during the class period has had, a controlling interest in

Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate

family; and all persons who will submit timely and otherwise proper requests for exclusion from the

Rule 23 Ohio Wage Class and/or Rule 23 Ohio Unjust Enrichment Class.

245.     The number and identity of the Rule 23 Ohio Wage Class members and Rule 23 Ohio

Unjust Enrichment Class members are ascertainable from Defendants' records.

246.     The hours assigned and worked, the positions held, deliveries completed, and the

rates of pay and reimbursements paid for each Rule 23 Ohio Wage Class member are determinable from Defendants' records.

247.    The benefits conferred by the Rule 23 Ohio Unjust Enrichment Class members and realized by Defendants are determinable from Defendants' records.

248.    For the purpose of notice and other purposes related to this action, the Rule 23 Ohio Wage Class members and Rule 23 Ohio Unjust Enrichment Class members' names and contact information are readily available from Defendants.

249.    Notice can be provided by means permissible under Rule 23 for the Rule 23 Ohio Wage Class members and the Rule 23 Ohio Unjust Enrichment Class members.

250.    The Rule 23 Ohio Wage Class members and Rule 23 Ohio Unjust Enrichment Class members are so numerous that joinder of all members is impracticable.

251.    The disposition of the Rule 23 Ohio Wage Class members and Rule 23 Ohio Unjust Enrichment Class members' claims as a class will benefit the parties and the Court.

252.    There are more than 50 Rule 23 Ohio Wage Class members.

253.    There are more than 50 Rule 23 Ohio Unjust Enrichment Class members.

254.    Plaintiff's claims are typical of those claims which could be alleged by any class member in either the Rule 23 Ohio Wage Class members and Rule 23 Ohio Unjust Enrichment Class, and the relief sought is typical of the relief which would be sought by each Rule 23 Ohio Wage Class members and Rule 23 Ohio Unjust Enrichment Class member in separate actions.

255.    Plaintiff and the Rule 23 Ohio Wage Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Section 34a and O.R.C. § 4113.15.

256.    Plaintiff and the Rule 23 Ohio Unjust Enrichment Class members have also unjustly

29

enriched Defendants in the same way—by providing automobiles for use in their business at no cost to Defendants.

257.    Plaintiff and the Rule 23 Ohio Wage Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

258.    Plaintiff and the Rule 23 Ohio Unjust Enrichment Class sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures

259.    By seeking to represent the interests of the Rule 23 Ohio Wage Class members and Rule 23 Ohio Unjust Enrichment Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

260.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Ohio Wage Class and Rule 23 Ohio Unjust Enrichment Class and has no interests antagonistic to the Rule 23 Ohio Wage Class.

261.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

262.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

263.    Upon information and belief, Defendants and other employers throughout the state

violate Section 34a and O.R.C. § 4113.15. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

264. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

265. The Rule 23 Ohio Wage Class and the Rule 23 Ohio Unjust Enrichment Class are properly treated as subclasses pursuant to Rule 23(c)(5).

266. Common questions of law and fact exist as to the Rule 23 Ohio Wage Class that predominate over any questions only affecting Plaintiff and the Rule 23 Ohio Wage Class members individually and include, but are not limited to:

     a. Whether Plaintiff and the Rule 23 Ohio Wage Class members were subject to a common expense reimbursement policy;

     b. Whether Plaintiff and the Rule 23 Ohio Wage Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

     c. Whether Plaintiff and the Rule 23 Ohio Wage Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

     d. Whether Defendants collected and maintained records of Plaintiff and the Rule 23 Ohio Wage Class members' actual vehicle expenses;

     e. Whether Defendants reimbursed Plaintiff and the Rule 23 Ohio Wage Class members for their actual expenses;

     f. Whether Defendants reimbursed Plaintiff and the Rule 23 Ohio Wage Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

g. Whether Defendants reimbursed Plaintiff and the Rule 23 Ohio Wage Class members based on a reasonable approximation of the expenses they incurred;

h. Whether Defendants properly reimbursed Plaintiff and the Rule 23 Ohio Wage Class members;

i. Whether Defendants failed to pay Plaintiff and the Rule 23 Ohio Wage Class in a timely manner as described by O.R.C. § 4113.15, and, if so, whether the wages owed are "in dispute";

j. The nature and extent of class-wide injury and the measure of damages for those injuries;

k. Whether Plaintiff and the Rule 23 Ohio Wage Class members were subject to a common policy that required them to provide cellphones to use when completing deliveries for Defendants; and

l. Whether Plaintiff and the Rule 23 Ohio Wage Class members were subject to a common cellphone expense reimbursement policy.

267. Common questions of law and fact exist as to the Rule 23 Ohio Unjust Enrichment Class that predominate over any questions only affecting Plaintiff and the Rule 23 Ohio Unjust Enrichment Class members individually and include, but are not limited to:

a. Whether Plaintiff and the Rule 23 Ohio Unjust Enrichment Class members were subject to a common policy that required them to provide cars to complete deliveries for Defendants;

b. Whether Plaintiff and the Rule 23 Ohio Unjust Enrichment Class members were subject to a common automobile expense reimbursement policy;

c. Whether Plaintiff and the Rule 23 Ohio Unjust Enrichment Class members were subject to a common policy that required them to provide cellphones to use when completing deliveries for Defendants;

d. Whether Plaintiff and the Rule 23 Ohio Unjust Enrichment Class members were subject to a common cellphone expense reimbursement policy;

e. Whether Plaintiff and the Rule 23 Ohio Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

f. Whether Defendants avoided business expenses they would have otherwise been required to cover but for Plaintiff and the Rule 23 Ohio Unjust Enrichment Class providing cars and cellphones to use to make deliveries;

g. How much it would have cost Defendants to operate their business but for Plaintiff and the Rule 23 Ohio Unjust Enrichment Class providing cars and cellphones to use to make deliveries;

h. Whether Plaintiff and the Rule 23 Ohio Unjust Enrichment Class conferred a benefit on Defendants that Defendants were aware of;

i. Whether Defendants accepted the benefits conferred on them by Plaintiff and the Rule 23 Ohio Unjust Enrichment Class;

j. Whether it would be unjust for Defendants to retain the benefit conferred on them by Plaintiff and the Rule 23 Ohio Unjust Enrichment Class without compensating for it;

k. The nature and extent of class-wide injury and the measure of damages for those injuries.

268. In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Ohio Wage Class and the Rule 23 Ohio Unjust Enrichment Class, Plaintiff will request payment of a service award upon resolution of this action.

## Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

269. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

270. Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

271. Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

272.     Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

273.     Defendants failed to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because Plaintiff and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

274.     By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

275.     Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

276.     As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages - Ohio Constitution, Article II, § 34a**
**(On Behalf of Plaintiff and the Rule 23 Ohio Wage Class)**

277.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

278.     Defendants paid Plaintiff and the Rule 23 Ohio Wage Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

279.     Defendants ostensibly paid Plaintiff and the Rule 23 Ohio Wage Class at or close to minimum wage for the hours they worked.

280. Because Defendants required Plaintiff and the Rule 23 Ohio Wage Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiff and the Rule 23 Ohio Wage Class minimum wage.

281. By not paying Plaintiff and the Rule 23 Ohio Wage Class at least minimum wage for each hour worked, Defendants has violated the Ohio Constitution, Article II, § 34a.

282. As a result of Defendants' violations, Plaintiff and the Rule 23 Ohio Wage Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional two times unpaid wages/unreimbursed expenses in damages under Section 34a, costs, and attorneys' fees.

**Count 3**
**Untimely Payment of Wages – O.R.C. § 4113.15**
**(On Behalf of Plaintiff and the Rule 23 Ohio Wage Class)**

283. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

284. During all relevant times, Defendants were covered by O.R.C. § 4113.15, and Plaintiff and the Rule 23 Ohio Wage Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

285. O.R.C. § 4113.15(A) requires that Defendants pay Plaintiff and the Rule 23 Ohio Wage Class all wages on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

286. By failing to pay Plaintiff and the Rule 23 Ohio Wage Class all wages due to them under the FLSA and Ohio Constitution, Defendants have also violated the Ohio Prompt Pay Act.

287.     Plaintiff and the Rule 23 Ohio Wage Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

288.     In violating Ohio law, Defendants acted willfully, without a good faith basis, and with reckless disregard to Ohio law.

289.     As a result of Defendants' willful violation, Plaintiff and the Rule 23 Ohio Wage Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

## Count 4
## Damages Pursuant to O.R.C. § 2307.60
## (On Behalf of Plaintiff and the Rule 23 Ohio Wage Class)

290.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

291.     The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

292.     By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Plaintiff and the Rule 23 Ohio Wage Class have been injured as a result.

293.     O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

294.     As a result of Defendants' willful violations of the FLSA, Plaintiff and the Rule 23 Ohio Wage Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**Count 5**
**Unjust Enrichment**
**(On Behalf of Plaintiff and Rule 23 Ohio Unjust Enrichment Class)**

295.     The Rule 23 Ohio Unjust Enrichment Class members at the Defendants' Jet's Pizza stores have conferred a benefit on Defendants by using their own cars and cellphones to perform work for Defendants.

296.     Defendants are aware of and have accepted the benefit conferred on them by Rule 23 Ohio Unjust Enrichment Class members.

297.     It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Rule 23 Ohio Unjust Enrichment Class members without commensurate compensation.

298.     Plaintiff and the Rule 23 Ohio Unjust Enrichment Class members are entitled to equitable restitution of the benefits they have conferred on Defendants within the 6 years preceding the filing of this complaint.

**WHEREFORE**, Plaintiff Reuben West prays for all of the following relief:

A.     Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.     Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.     Designation of Plaintiff as representative of the Rule 23 Ohio Wage Class and Rule 23

Ohio Unjust Enrichment Class, and counsel of record as Class Counsel for both Classes.

      E.      A declaratory judgment that the practices complained of herein are unlawful under Section 34a and O.R.C. § 4113.15.

      F.      An award of unpaid minimum wages and unreimbursed expenses due under Section 34a.

      G.      An award of damages under Section 34a, based on Defendants' failure to pay minimum wages, calculated as an additional two times of back wages.

      H.      Liquidated damages under O.R.C. § 4113.15.

      I.      Compensatory and punitive damages under O.R.C. § 2307.60.

      J.      An award of restitution as a result of unjust enrichment.

      K.      An award of prejudgment and post-judgment interest.

      L.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

      M.      Such other legal and equitable relief as the Court deems appropriate.

      Respectfully submitted,

      */s/ Samuel Elswick, Jr.*
      Andrew R. Biller (Bar # 0081452)
      Andrew P. Kimble (Bar # 0093172)
      Samuel D. Elswick, Jr. (Bar #0100327)
      Biller & Kimble, LLC
      8044 Montgomery Road
      Suite 515
      Cincinnati, OH 45236
      513-202-0710 (Phone)
      614-340-4620 (Fax)
      *abiller@billerkimble.com*
      *akimble@billerkimble.com*

*selswick@billerkimble.com*

[www.billerkimble.com](www.billerkimble.com)

*Counsel for Plaintiff*

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ *Samuel Elswick, Jr.*
Samuel Elswick, Jr.